IN THE SUPREME COURT OF TENNESSEE
January 26, 2022 Session[1]

## STATE OF TENNESSEE v. TYLER WARD ENIX

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Knox County**
**No. 107024   Steven Wayne Sword, Judge**

_____

**No. E2020-00231-SC-R11-CD**

_____

In this appeal, we clarify the appropriate standard of review for claims of prosecutorial misconduct during closing argument when a defendant fails to contemporaneously object but later raises the claim in a motion for a new trial. Tyler Ward Enix was convicted of premeditated first-degree murder and especially aggravated robbery for the 2015 killing of Kimberly Enix. Mr. Enix filed a motion for a new trial challenging his convictions. As relevant to this appeal, he alleged that four instances of improper prosecutorial closing argument, which were not contemporaneously objected to at trial, constitute reversible error. The trial court denied his motion for new trial. The Court of Criminal Appeals, reviewing the claims under the plain error doctrine, affirmed the trial court's judgment. Mr. Enix sought permission to appeal, arguing that this Court should employ plenary review to address his claims because they were included in his motion for a new trial. We granted permission to appeal and now hold that plain error review is the appropriate standard, and, furthermore, that Mr. Enix is not entitled to relief. Accordingly, we affirm the decision of the Court of Criminal Appeals for the separate reasons stated herein.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the court, in which ROGER A. PAGE, C.J., and SHARON G. LEE and HOLLY KIRBY, JJ., joined.

Eric Lutton (on appeal) and Mark E. Stephens (at trial), District Public Defenders; and Jonathan Harwell (on appeal) and John Halstead (at trial), Assistant Public Defenders, for the appellant, Tyler Ward Enix.

_____

[1] We heard oral argument through videoconference under this Court's emergency orders restricting court proceedings because of the COVID-19 pandemic.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Edwin Alan Groves, Jr., Assistant Attorney General; Charme Allen, District Attorney General; and Kevin Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual and Procedural Background[2]

As a result of the October 2015 homicide of Kimberly Enix ("the victim"), Tyler Ward Enix ("the Defendant") was charged in a seven-count indictment with felony murder, first-degree murder, especially aggravated robbery, especially aggravated kidnapping, and carjacking.  At trial, the State alleged that the Defendant stabbed the victim, his ex-wife, to death in her apartment and then fled the state with her car, her ATM card, and their two-year-old daughter.  Specifically, the State presented evidence at trial that the Defendant's marriage to Ms. Enix became volatile after the birth of their daughter.  The victim's grandmother described the Defendant as "very violent."  The victim's first husband, Chris Morrison, testified that he heard the couple arguing and "a lot of chaos" in the background of phone calls he had with his and the victim's oldest daughter.  The victim's supervisor testified that, about a year before the murder, the victim told her, "[I]f I ever don't show up to work . . . you need to come find me . . . you need to look at [the Defendant]."  Similarly, the victim had expressed to her supervisor that the Defendant told her she would "be in a body bag" if she ever left him, and characterized the Defendant as "a ticking time bomb."

After the victim and Defendant divorced in April 2015, the victim lived with their daughter in a Knoxville apartment and started dating one of her co-workers.  When she failed to show up for work on October 28, 2015, a Knoxville Police Department ("KPD") officer conducted welfare checks at the apartment.  Although the officer did not find anything out of place outside of the apartment during the first check, later that day, he entered the victim's apartment through an unlocked back door with another KPD officer and went upstairs where he found the victim lying "in the bedroom . . . deceased[ with] blood everywhere."  The officer testified that the victim "had a towel covering her upper body from around her chest up over her head and face."  Given the location of the blood, a KPD investigator opined that the victim was stabbed while on the floor.

---

[2] This opinion discusses only those facts necessary for consideration of the issue on which review was granted.  A full recitation of the facts is set out in the Court of Criminal Appeals' opinion.  State v. Enix, No. E2020-00231-CCA-R3-CD, 2021 WL 2138928 (Tenn. Crim. App. May 26, 2021), perm. app. granted, (Tenn. Oct. 13, 2021).

Officers found two phones that belonged to the victim near the body, including a broken pink iPhone and a black T-Mobile cell phone. Although investigators could not extract any data from the broken iPhone, the digital contents of the T-Mobile phone were still accessible. Records showed several calls between the victim and the Defendant on the evening of October 27, 2015. In text messages exchanged between the two leading up to the murder, the Defendant criticized the victim as having "no morals" and a "drinking problem." He called the victim "heartless" and a "whore." In other messages, the Defendant threatened to send photos of alcohol in the victim's apartment to her first husband, who had previously limited the victim's contact with their daughters due, in part, to alcohol abuse. Between October 26 and 27 alone, the Defendant texted the victim upwards of sixty times, pleading with her to talk to him and to see their daughter, telling her he hated her, repeatedly asking her about her relationship with other men, and asking her to "please [not] do anything to get [him] in trouble." In nearly each one of the victim's few responses, she asked the Defendant to stop contacting her.

An assistant medical examiner for Knox County conducted an autopsy on the victim and testified that the victim had forty-seven stab wounds on various parts of her body, which caused her death. She opined that the manner of death was homicide. The Tennessee Bureau of Investigation recovered DNA from the victim's fingernails that was consistent with the Defendant's DNA profile. Tissues recovered from the downstairs bathroom of the victim's apartment tested positive for the Defendant's blood.

On October 28, 2015, the victim's debit card was used to withdraw $300 at an ATM in Knoxville. Photos captured during that ATM transaction showed the Defendant driving the victim's black Chevrolet Impala. The victim's ATM card was used again the next morning to withdraw $200 at an ATM in Ohio. Photos captured during that ATM transaction again showed the Defendant driving the victim's vehicle. The Defendant was arrested in Ohio on October 29, 2015, after an officer from the Morrow County, Ohio, Sheriff's Office received information that a caller saw a vehicle matching the description in an AMBER Alert. The officer confiscated approximately $305, along with a pair of jeans that had a red stain, which was later determined to be the victim's blood. According to the incident report, the Defendant was compliant when stopped and expressed concerns about the safety of his and the victim's daughter, who was in the back seat. He claimed that the two of them were headed to Cleveland, expressed that he thought it was a "matter of time" until he was stopped, and indicated that he was aware that the victim was dead. A KPD investigator testified that the Defendant had scratches on his neck and face and "[l]ooked like he had been in a fight."

At trial, the Defendant did not dispute the stabbing, but, rather, argued that it occurred while the Defendant was in a state of passion and, thus, he was unable to form the requisite intent for premeditation. The Defendant also asserted that any taking of the

victim's property occurred separate from the killing, rather than as part of a connected plan, and, thus, was not a robbery.

Relevant to this appeal,[3] the record reveals that, during the State's closing argument, counsel stated:

> And we told you at the beginning a premeditated act does not have to be in the mind of the accused for any specific period of time. It can happen in an instant. But did it happen in an instant here when you think about how long it took him to kill her: One, two, three, four, five, six, seven, eight, nine, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47.
>
> We talked about judgment, and thinking about that—I'm out of breath and I'm not even wrestling with anybody.

In his motion for a new trial, the Defendant claimed:

> Error was committed when the State in their closing argument pounded the table for many of the [forty]-seven (47) stab wounds[4] and then declared himself to be out of breath and said he wasn't even wrestling with anyone while he was doing that. The State was essentially testifying to the mechanics of the homicide. This demonstration was highly prejudicial and violated Mr. Enix's rights to due process and a fair trial.

In regard to the broken iPhone that was found at the victim's apartment, during closing argument, the State suggested:

---

[3] As noted above, we granted this appeal to clarify the appropriate standard of review in cases where the defendant fails to contemporaneously object to alleged prosecutorial misconduct during closing argument but later raises the claim in a motion for a new trial. The Defendant raised five issues related to statements made by the State during its closing arguments in his motion for a new trial. Four of those were not contemporaneously objected to at trial, and one of them was. The Defendant raises all five of these claims, in addition to seven instances of alleged misconduct not raised in the motion for new trial or objected to at trial, in his brief before this Court. Given the narrow issue we granted review to address, we only examine those four arguments raised in the motion for a new trial that were not contemporaneously objected to at trial.

[4] We note that the transcript does not indicate when, if at all, counsel for the State "pounded the table." The State raises this consideration in its brief before this Court, and the Defendant, in his reply brief, cites to his motion for a new trial to support the claims of physical demonstration. For purposes of this appeal, we assume the claimed physical demonstration occurred.

- 4 -

And so when he sees in that iPhone, what do you think he sees?  Do you think there's more communication . . . with [the man the victim was dating]?  We'll never know, because [the Defendant] smashed that iPhone.  He—he got rid of that evidence.  Just like he did all the other things to cover up his crime here.

In his motion for a new trial, the Defendant argued:

Error was committed in the State's closing argument when the State speculated that [the Defendant] may have seen [the victim's] texts with [the man the victim was dating], with the inference being that this is what enraged him.  The State then followed up saying that we will never know because [the Defendant] destroyed her phone.  This was pure speculation on two fronts.  First, did [the Defendant] see the texts and second, was he the one who broke [the victim's] phone.  This presentation of speculation masquerading as facts violated [the Defendant's] right to a fair trial.

On rebuttal closing, the State addressed the Defendant's drive north and his interaction with police in Ohio.  Counsel stated, "[Counsel for the Defendant] makes a deal of, you know, [the Defendant] didn't run from the police. . . . And he doesn't run from the police to show that he didn't have a plan?  Well, he doesn't run from the police, because he's a coward."

In the motion for a new trial, the Defendant argued that:

Error was committed in the State's rebuttal closing when the State said that [the Defendant] did not run from the police because he was a coward.  It is inappropriate for the State to engage in name calling during their closing arguments.  Additionally, running from the police with a child in the car would have been both a felony and dangerous to the child.  However, the State was able to reverse that logic and say somehow [the Defendant] was at fault and thus a coward for not engaging in a high speed attempt to escape from the police.

Lastly, counsel also stated during rebuttal closing, "Did you notice that [the Defendant's] course and the maps that are shown was due north.  Headed to Canada, straight north."  The Defendant argued this was an error because it was "pure speculation and there was no evidence to support that argument."

After the jury returned a verdict convicting the Defendant of premeditated first-degree murder and especially aggravated robbery, the trial court denied the Defendant's

motion for new trial.  The Defendant appealed to the Court of Criminal Appeals.  As it relates to the four claims relevant to this appeal, the Defendant argued that "despite his failure to object to all the instances of alleged prosecutorial misconduct, his inclusion of those issues in a motion for new trial is sufficient to preserve the issues for plenary review." State v. Enix, No. E2020-00231-CCA-R3-CD, 2021 WL 2138928, at *15 (Tenn. Crim. App. May 26, 2021).

Examining State v. Hawkins, 519 S.W.3d 1, 48 (Tenn. 2017), and State v. Ponder, No. M2018-00998-CCA-R3-CD, 2019 WL 3944008, at *11–12 (Tenn. Crim. App. Aug. 21, 2019), perm. app. denied, (Tenn. Dec. 5, 2019), on which the Defendant relied, the court reasoned that those cases were "distinguishable because they generally involved the prosecutor's use of information in closing argument that was objected to pretrial, which was determined to have sufficiently preserved the issue for appellate review."  Enix, 2021 WL 2138928, at *15.  The court then applied plain error review to the four claims raised in the motion for a new trial but not contemporaneously objected to and concluded that the Defendant "failed to show that the issues were not waived for tactical reasons."  Id. Accordingly, the court affirmed the Defendant's convictions and sentences.  Id. at *18. The Defendant appealed, and we granted his application on the limited issue stated above.

## II.    Analysis

### A.    *Hawkins and Its Predecessors*

Essentially, the first question for a reviewing court on any issue is "what is the appropriate standard of review?"  Prior to 2017, a long line of cases held that failure to object to a prosecutor's statements during closing arguments results in waiver on appeal. See State v. Sutton, 562 S.W.2d 820, 825 (Tenn. 1978) (stating that errors not contemporaneously objected to are waived); State v. Dellinger, 79 S.W.3d 458, 495 (Tenn. 2002) ("[W]e note that the record indicates that Appellant's [sic] did not make a single objection to anything that either of the two prosecutors said during their closing arguments. By failing to make a contemporaneous objection, Appellants waived this issue."); State v. Austin, 87 S.W.3d 447, 479 (Tenn. 2002) (finding the claim of prosecutorial misconduct during closing argument "procedurally defaulted" because the defendant failed to make a contemporaneous objection to the prosecutor's statements during closing argument), abrogated on other grounds by State v. Miller, 638 S.W.3d 136, 150 (Tenn. 2021); State v. Thomas, 158 S.W.3d 361, 413 (Tenn. 2005) ("[W]here a prosecuting attorney makes allegedly objectionable remarks during closing argument, but no contemporaneous objection is made, the complaining defendant is not entitled to relief on appeal unless the remarks constitute 'plain error.'"), abrogated on other grounds by Miller, 638 S.W.3d at 150; State v. Stephenson, 195 S.W.3d 574, 601 (Tenn. 2006) ("[F]irst, this Court observes that the Defendant made no objection to the prosecutor's remarks.  'It is well settled that

without a contemporaneous objection to a prosecutor's statements, the error is waived.'" (quoting State v. Farmer, 927 S.W.2d 582, 591 (Tenn. Crim. App. 1996))), abrogated on other grounds by State v. Watkins, 362 S.W.3d 530, 551 (Tenn. 2012); State v. Jordan, 325 S.W.3d 1, 57–58 (Tenn. 2010) ("Initially, we stress that it is incumbent upon defense counsel to object contemporaneously whenever it deems the prosecution to be making improper argument. . . . [D]efense counsel's failure to object contemporaneously will constitute a waiver of the issue on appeal. . . . [T]he defense failed to lodge timely objections to the prosecutor's arguments. Our review is therefore limited to the parameters of this Court's discretionary plain error review.").

The concepts supporting such a rule were recently discussed by this Court in State v. Minor, 546 S.W.3d 59 (Tenn. 2018). As we explained there:

> Appellate review generally is limited to issues that a party properly preserves for review by raising the issues in the trial court and on appeal. The obligation to preserve issues for appellate review applies to constitutional issues and issues of "any other sort." Appellate review preservation requirements ensure that the defense and the prosecution are afforded an opportunity to develop fully their opposing positions on an issue, and such requirements also enable a trial court to avoid or rectify an error before a judgment becomes final. As a result, appellate review preservation requirements serve to promote fairness, justice, and judicial economy by fostering the expeditious avoidance or correction of errors before their full impact is realized, and in this way, may obviate altogether the need for appellate review.

Id. at 65 (citations omitted); see also Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

In this case, the Defendant argues that this Court's 2017 decision in State v. Hawkins, 519 S.W.3d at 48, changed the rule such that "plenary review applies to any claim of improper closing argument that is raised in the motion for new trial." He states that, in Hawkins, "the Court held that the critical issue for determining whether to apply plain error or plenary review is whether the issue was included in the motion for new trial." For the reasons explained below, we disagree.

In Hawkins, the defense raised on appeal four instances of alleged prosecutorial misconduct during closing argument: (1) the prosecutor's use of the word "rape," (2) the prosecutor's description of the defendant as "mean," (3) the prosecutor's use of a saw as a

demonstrative aid, and (4) the prosecutor's statement that the defendant "never shed a tear for the victim." Id. at 46. The defendant did not contemporaneously object to any of the claimed errors, but included the prosecutor's use of the word "rape" and his characterization of the defendant as "mean" in his motion for a new trial. Id. at 47.

The Court applied plain error review to the claims related to the prosecutor's use of the saw and the statement that the defendant "never shed a tear for the victim." Id. at 49. However, the Court applied plenary review to the two claims raised in the motion for a new trial. Id. at 48 ("Although the defendant did not contemporaneously object to any of the alleged instances of improper prosecutorial argument, we will apply plenary review, rather than plain error review, to the two alleged instances of improper prosecutorial argument raised in the motion for new trial . . . ."). The first claim of alleged prosecutorial misconduct—the prosecutor's use of the word "rape"—was subject to a pretrial ruling in which the trial court had prohibited the prosecution and prosecution witnesses from using that term.[5] Id. Thus, the State conceded that use of the term was improper. Id. However, the Court nonetheless concluded that plenary review did not warrant relief. Id. at 48–49. Similarly, as to the second claim raised in the defendant's motion for a new trial—that the prosecutor improperly referred to the defendant as "mean"—the Court applied plenary review and found that such characterization could not be said to be "improper, inflammatory, or inconsistent with the proof presented at trial." Id. at 49.

As mentioned above, the Defendant characterizes Hawkins as holding that "the critical issue for determining whether to apply plain error or plenary review is whether the issue was included in the motion for new trial." In particular, he emphasizes the Court's application of plenary review to the claim of alleged prosecutorial misconduct involving the prosecutor's comment in which he called the defendant "mean," which was not the subject of a pretrial motion. According to the Defendant, this "holding" is "binding precedent" and principles of stare decisis "support reaffirming Hawkins."

While we recognize the uncertainty our application of plenary review to two of the arguments in Hawkins may have caused, we do not interpret Hawkins in the same manner as the Defendant. As detailed above, this Court has long held that a defendant's failure to

---

[5] This fact is significant. As this Court has previously held, "'where the record on a pretrial suppression motion or on a motion *in limine* clearly presents an evidentiary question and where the trial judge has clearly and definitively ruled,' defense counsel need not offer further objections to the trial court's ruling." State v. Walls, 537 S.W.3d 892, 899 (Tenn. 2017) (quoting State v. McGhee, 746 S.W.2d 460, 462 (Tenn. 1988)). Even still, however, we cautioned that, "in cases in which the 'issues are only tentatively suggested or the record [is] only partially and incompletely developed[,] . . . [c]ounsel necessarily take some calculated risks in not renewing objections.'" See id. (quoting McGhee, 746 S.W.2d at 462). The Defendant seems to recognize that this fact distinguishes Hawkins from the case on appeal.

contemporaneously object to alleged prosecutorial misconduct during closing argument results in waiver of the issue on appeal. Hawkins in no way attempted to overrule these cases. In fact, as noted by the State, the Court in Hawkins elected to apply plenary review to the two claims raised in the motion for a new trial without citation to authority or any discussion of intentionally overruling long-standing Tennessee case law.[6] See id. at 48. The same principles of stare decisis referenced by the Defendant on appeal applied to this Court's decision in Hawkins. Thus, while this Court need not explicitly declare when it is overruling prior case law, see Asher v. Texas, 128 U.S. 129, 131–32 (1888), the absence of any language in Hawkins purporting to overrule precedent serves to indicate that Hawkins should not be read to, in fact, overrule decades of clear Tennessee case law in this regard.

The Defendant also argues that "abandoning Hawkins and insisting on a contemporaneous objection would be contrary to Tennessee legal culture." Specifically, the Defendant references the common practice of "afford[ing] opposing counsel the courtesy of . . . talk[ing] in an uninterrupted fashion," suggesting that interruptions by objection during closing argument may be considered as "rude" by many Tennessee attorneys. Even assuming this characterization of common practices is accurate in Tennessee criminal trials today, those common practices cannot outweigh Tennessee law.

For these reasons, we hold that plain error review is the appropriate standard of review to apply to claims of alleged prosecutorial misconduct during closing argument when no contemporaneous objection was lodged at the time of the alleged misconduct but the claim is raised in the motion for a new trial. To the extent the standard applied in Hawkins is inconsistent with our decision today, Hawkins is overruled as to this issue.

### B.  Application of Plain Error Review

This Court consistently has recognized that "closing argument is a valuable privilege that should not be unduly restricted." State v. Reid, 164 S.W.3d 286, 320 (Tenn. 2005) (quoting State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001)). It provides parties with an opportunity to persuade the jury of their theory of the case and to highlight the strengths

---

[6] In his reply brief, the Defendant argues that prior Tennessee cases discussing the need to contemporaneously object to preserve an issue for appellate review do not squarely address the circumstances present in cases like the one on appeal. Specifically, he argues that those and similar cases do not directly address whether a claim of prosecutorial misconduct is properly preserved when there is no contemporaneous objection but the argument is raised in the motion for a new trial. While this may be true, the cases referenced earlier in this opinion also do not make any mention of the fact that the claim was not raised in a motion for a new trial. Furthermore, the clear rule articulated in those cases is quite broad— when a contemporaneous objection is not lodged at the time the alleged prosecutorial misconduct occurs, the issue is treated as waived on appeal.

and weaknesses in the proof for the jury. State v. Banks, 271 S.W.3d 90, 130 (Tenn. 2008). "[P]rosecutors, no less than defense counsel, may use colorful and forceful language in their closing arguments, as long as they do not stray from the evidence and the reasonable inferences to be drawn from the evidence or make derogatory remarks or appeal to the jurors' prejudices." Id. at 131 (citation omitted). "A criminal conviction should not be lightly overturned solely on the basis of the prosecutor's closing argument." Id. Rather, "[a]n improper closing argument will not constitute reversible error unless it is so inflammatory or improper that i[t] affected the outcome of the trial to the defendant's prejudice." Id.

As stated above, because the Defendant's claims are treated as unpreserved, plain error review applies. Only in "exceptional circumstances" do errors reviewed under the plain error doctrine warrant reversal. Id. at 132 n.30. To obtain relief under plain error review, the defendant bears the burden of persuading the appellate court that all five of the following prerequisites are satisfied:

> (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice.

State v. Dotson, 450 S.W.3d 1, 49 (Tenn. 2014) (quoting State v. Gomez, 239 S.W.3d 733, 737 (Tenn. 2007)). "If a defendant fails to establish any of these criteria, an appellate court must deny relief under the plain error doctrine, and an appellate court need not consider all criteria when the record demonstrates that one of them cannot be established." State v. Vance, 596 S.W.3d 229, 254 (Tenn. 2020) (quoting Minor, 546 S.W.3d at 67).

In his motion for a new trial, the Defendant raised four claims of improper closing argument that were not objected to at trial: (1) the prosecutor counting to forty-seven and pounding the table, (2) the prosecutor's accusation that the Defendant broke the victim's iPhone, (3) the prosecutor's suggestion that the Defendant was fleeing to Canada, and (4) the prosecutor's statement that the Defendant was a "coward." The Court of Criminal Appeals held that the Defendant failed to show that the issues were not waived for tactical reasons. Enix, 2021 WL 2138928, at *15.

We need not determine whether the Defendant waived these issues for tactical reasons.[7] Instead, even assuming all of these alleged errors are considered cumulatively,

---

[7] We note that determining if a Defendant has waived issues for tactical reasons often is a difficult determination to make and one that is often further developed in the event of a post-conviction proceeding.

we conclude that no substantial right of the Defendant was adversely affected by the claimed errors. "For a 'substantial right' of the accused to have been affected, the error must have prejudiced the appellant. In other words, it must have affected the outcome of the trial court proceedings." State v. Rimmer, 623 S.W.3d 235, 278 (Tenn. 2021) (quoting State v. Maddin, 192 S.W.3d 558, 562 (Tenn. Crim. App. 2005)). Here, overwhelming evidence established that the Defendant premeditated the murder. The evidence at trial showed the Defendant threatened to put the victim "in a body bag." Records of text exchanges revealed his obsessive jealousy. The Defendant's DNA was recovered from under the victim's fingernails and his blood was found on tissues in the downstairs bathroom of the victim's apartment. A red stain on the Defendant's jeans tested positive for the victim's blood. The Defendant fled the scene with his and the victim's child in the victim's vehicle. The victim was stabbed 47 times. In light of this abundant evidence, the Defendant has failed to show that the alleged prosecutorial misconduct affected the outcome of the trial court proceedings. Thus, we conclude that the Defendant is not entitled to relief via the plain error doctrine.

## CONCLUSION

For these reasons, we affirm the judgment of the Court of Criminal Appeals on the separate grounds stated herein. It appearing that the Defendant is indigent, costs of this appeal are taxed to the State.

_____
JEFFREY S. BIVINS, JUSTICE